**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 17-179** |
| **KENNETH MARTIN** | **SECTION: "G"** |

## ORDER AND REASONS

Before the Court is Defendant Kenneth Martin's ("Martin") motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] In the motion, Martin contends that his medical conditions—combined with the elevated risk of contracting COVID-19 while in custody—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[2] The government opposes the motion for compassionate release.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On September 28, 2017, Martin was charged by an Indictment with conspiracy to distribute and to possess with the intent to distribute 40 grams or more of fentanyl and 100 grams or more of heroin ("Count 1"); four counts of distribution of a quantity of heroin ("Counts 2, 3, 4, and 5"); four counts of distribution of fentanyl ("Counts 6, 7, 8, and 9"); one count of

---

[1] Rec. Doc. 83.

[2] *Id*.

[3] Rec. Doc. 87.

1

possession of a firearm by a convicted felon ("Count 10"); and one count of possession of a firearm in furtherance of a drug trafficking crime ("Count 11").[4] On October 15, 2018, the government filed a bill of information under 21 U.S.C. § 851, charging Martin with prior drug felonies.[5] On October 18, 2018, Martin pleaded guilty as charged in Counts 1, 2–8, 10, and 11 of the Indictment.[6]

At the time that Martin entered his guilty plea, the statutory mandatory minimum sentence for his conviction, in light of the enhancements under 21 U.S.C. § 851, was a total of 180 months.[7] However, before Martin was sentenced, the First Step Act of 2018 was passed, which lowered the total mandatory minimum he faced to 120 months.[8]

On May 9, 2019, the Court sentenced Martin to the mandatory minimum term of 120 months imprisonment.[9] The Court also sentenced Martin to a term of 6 years of supervised release.[10] When the instant motion was filed, Martin was incarcerated at the U.S. Penitentiary in Atlanta, Georgia.[11] However, BOP records reflect that he is currently housed at Federal

---

[4] Rec. Doc. 17.

[5] Rec. Doc. 49.

[6] Rec. Doc. 50.

[7] Rec. Doc. 57 at ¶ 110.

[8] Rec. Doc. 66.

[9] Rec. Doc. 82. Specifically, this Court sentenced Martin to a term of 60 months imprisonment as to each of Counts 1, 2, 3, 4, 5, 6, 7, 8, and 10, such terms to be served concurrently, and 60 months imprisonment as to Count 11, to be served consecutively to the sentence imposed for each of Counts 1, 2, 3, 4, 5, 6, 7, 8, and 10. *Id.* at 2.

[10] *Id.* at 3. Specifically, this Court sentenced Martin to a term of four years supervised release as to Count 1, six years as to Counts 2 through 8, and three years as to Counts 10 and 11, all terms to run concurrently. *Id.*

[11] Rec. Doc. 83 at 14.

Correctional Institution Texarkana, a low security facility.[12] His projected release date is February 8, 2026.[13]

On December 17, 2020, Martin filed the instant *pro se* motion for compassionate release pursuant to Section 3582(c)(1)(A).[14] On December 21, 2020, the Court appointed the Office of the Federal Public Defender for the Eastern District of Louisiana to represent Martin.[15] On December 30, 2020, the government filed an opposition to the motion for compassionate release.[16] On February 5, 2021, Martin, through counsel, filed a supplemental memorandum in further support of the motion for compassionate release.[17]

## II. Parties' Arguments

### A.   *Martin's Arguments in Support of the Motion*

Martin argues that his hypertension, obesity, and "diabetic threat"—combined with the risks of contracting COVID-19 while incarcerated—constitute sufficient grounds for a sentence reduction.[18] Martin asserts that he exhausted his administrative remedies by filing a request for compassionate release with the warden of his facility on October 16, 2020.[19] As support, Martin attaches an Administrative Remedy Informal Resolution Form he submitted to the BOP on

---

[12] https://www.bop.gov/inmateloc/.

[13] *Id*.

[14] Rec. Doc. 83.

[15] Rec. Doc. 84.

[16] Rec. Doc. 87.

[17] Rec. Doc. 93.

[18] Rec. Doc. 83 at 2.

[19] *Id*.

December 3, 2020.[20] The form states that Martin "filed [his] compassionate release request over 30 days ago" and had not received a response.[21] Martin contends that his circumstances are extraordinary and compelling to warrant compassionate release under Section 3582(c)(1)(A).[22] He argues that a sentence of time served would accomplish the goals of sentencing set forth at 18 U.S.C. § 3553(a)(2).[23] Finally, Martin asserts that he would not be a danger to the community if released.[24] He states that he would reside with his wife in New Orleans and would work for the Sewerage and Water Board of New Orleans.[25]

### B.   *The Government's Arguments in Opposition to the Motion*

The government makes three principal arguments in opposition to the instant motion.[26] First, the government argues that Martin has not proven that he exhausted his administrative remedies.[27] Although Martin alleged that he submitted a request for release to the BOP in October 2020, the government asserts that he has provided no documentation in support of his claim.[28] According to the government, the BOP has affirmed that it has no record of such a request.[29] Therefore, the government asserts that this Court "could dismiss the defendant's motion without

---

[20] Rec. Doc. 83-1 at 10.

[21] *Id*.

[22] Rec. Doc. 83 at 3.

[23] *Id*. at 7–9.

[24] *Id*. at 11.

[25] *Id*. at 12.

[26] Rec. Doc. 87.

[27] *Id*. at 11.

[28] *Id.* at 13.

[29] *Id.*

prejudice, or, for purposes of expedition, the Court alternatively could resolve the matter on the merits."[30]

Second, the government contends that Martin has failed to present any "extraordinary and compelling reasons" warranting a reduction under Section 3582(c)(1)(A).[31] The government contends that Martin has not submitted any medical documentation to support his claim that he is obese or diabetic.[32] The government concedes that Martin suffers from hypertension, but it argues that hypertension is not among the CDC's list of COVID-19 risk factors.[33] The government notes that hypertension falls within the CDC's list of factors that "might" increase the risk of severe illness.[34] "Given the lack of data and certainty as to the 'might' category of CDC factors," the government argues that Martin "does not allege, much less prove, that he has a medical condition constituting an 'extraordinary and compelling reason' for compassionate release."[35] The government asserts that Martin's hypertension "is well-controlled and does not present any impediment to his ability to provide self-care in the institution."[36] Accordingly, the government contends that the motion should be denied because Martin has failed to establish an extraordinary and compelling reason for his release based on COVID-19.[37]

Third, the government argues that the Section 3553(a) factors disfavor a sentence

---

[30] *Id.*

[31] *Id.* at 14.

[32] *Id.* at 18.

[33] *Id.* at 19.

[34] *Id.* at 20.

[35] *Id.*

[36] *Id.*

[37] *Id.*

reduction.[38] The government asserts that Martin's "long criminal history, which involves several crimes with guns, violence, and drugs, combined with his conviction in the instant case for more gun-assisted drug dealing, make him a poor candidate for compassionate release."[39] The government notes that Martin's pattern of criminal conduct has continued throughout his adult life, which the government asserts suggests that he presents a danger to the community if released.[40] The government notes that Martin has served only a third of his 120 month sentence.[41] For these reasons, the government asserts that this Court should deny the motion for a sentence reduction.[42] Finally, the government contends that this Court does not have authority to direct the BOP to place Martin on home confinement.[43]

**C.      *Martin's Arguments in Further Support of the Motion***

Martin makes four arguments in the supplemental brief filed through counsel: (1) he has exhausted his administrative remedies; (2) his medical vulnerabilities constitute extraordinary and compelling reasons to reduce his sentence and release him from prison; (3) his prior history, clean prison record and family support suggest that he is exactly the type of offender worthy of consideration for release; and (4) he does not pose a danger to the community and his release is supported by the Section 3553(a) factors.[44]

---

[38] *Id.* at 21.

[39] *Id*.

[40] *Id*. at 22.

[41] *Id*.

[42] *Id*. at 25.

[43] *Id*.

[44] *See generally* Rec. Doc. 93.

First, Martin asserts that he has exhausted his administrative remedies.[45] Martin asserts that he has satisfied this administrative requirement because 30 days have lapsed since he submitted his request to the warden of his facility.[46] Martin contends that the Administrative Remedy Informal Resolution Form corroborates "his claim that he filed a request prior to November" and proves that the BOP was on notice of the request as of December 3, 2020.[47] Therefore, Martin argues that he has exhausted his administrative remedies because there is "clear evidence of the BOP receiving (and responding to) an inquiry from [him] regarding the status of his request more than two months ago."[48] Additionally, Martin asserts that "the government's concession that the Court 'could resolve the matter on the merits' should be construed as a waiver of any exhaustion defense."[49] Martin contends that it is "eminently clear that [he] made a good faith effort to request the warden's review of his claim and that the BOP was on notice of the request months ago."[50] Martin contends that "[t]he only reason for invoking exhaustion is to further delay [his] ability to have his request heard."[51]

Second, Martin argues that his medical vulnerabilities constitute extraordinary and compelling reasons to reduce his sentence and release him from prison.[52] Martin notes that he

---

[45] *Id.* at 6–15.

[46] *Id.* at 7.

[47] *Id*. at 8.

[48] *Id*.

[49] *Id.*

[50] *Id*. at 12.

[51] *Id*. at 13.

[52] *Id*. at 16.

suffers from hypertension, is overweight, and is prediabetic.[53] His daily medications include Lisinopril and Hydrochlorothiazide, which are both used to treat high blood pressure.[54] Martin asserts that these conditions make him especially vulnerable to experiencing severe illness, complications, or death from COVID-19 if he contracts the virus in prison.[55] Martin notes that recent studies have found that hypertension is the "most prevalent comorbidity in patients hospitalized for COVID-19."[56] Martin asserts that overweight people are also at higher risk of severe injury from COVID-19.[57] Furthermore, Martin notes that studies show a high prevalence of prediabetes among hospitalized COVID-19 patients, and provide "early indications for a possible association between preexisting prediabetes and COVID-19 disease severity."[58]

Third, Martin argues that his prior history, clean prison record and family support suggest that he is the type of offender worthy of consideration for release.[59] Martin suggests that prior to his arrest and conviction in the instant case, every aspect of his life was controlled by drugs.[60] Although he possessed a gun in furtherance of a drug trafficking crime, Martin notes that the

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* (quoting Jing Yang, et al., *Prevalence of comorbidities and its effects in coronavirus disease 2019 patients: A systematic review and meta-analysis*, Int'l Journal of Infectious Diseases, 94 (2020): 91-95, at Abstract (Apr. 3, 2020), https://www.ijidonline.com/article/S1201-9712(20)30136-3/pdf).

[57] *Id.* at 18 (citing Meredith Wadman, *Why COVID-19 is more deadly in people with obesity—even if they're young*, Science (Sept. 8, 2020), https://www.sciencemag.org/news/2020/09/why-covid-19-more-deadly-people-obesity-even-if-theyre-young).

[58] *Id.* at 20 (quoting Thirunavukkarasu Sathish, *Preexisting Diabetes and the Severity of COVID-19*, Prim. Care Diabetes Europe (Sept. 2, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7480529/pdf/main.pdf).

[59] *Id.*

[60] *Id.*

testimony of the agent and the statements of the AUSA at his sentencing hearing show that neither the investigators nor the prosecution in this case ever suspected Martin of committing violence.[61] Furthermore, Martin states that he has unusually strong family and community ties.[62] He plans to return to New Orleans and live with his wife following his release from prison.[63] Additionally, he has a contact at the Sewerage and Water Board who he believes can help him secure employment.[64] Martin asserts that he has maintained an excellent prison record, and he was moved from a medium security facility in Atlanta to a low security facility in Texarkana as a result of his exemplary prison conduct.[65]

Finally, Martin argues that he does not pose a danger to the community and his release is supported by the Section 3553(a) factors.[66] Martin contends that he is in need of drug treatment, which could be provided upon release.[67] He will have the support of his family, and he is not a violent offender.[68] Therefore, Martin argues that granting a sentence reduction would be entirely consistent with the Section 3553(a) factors because "the time he has spent in prison has been sufficient to deter him from future crime, punish him for his offenses, protect the public, and provide him with needed correctional treatment, and his rehabilitative needs will be more effectively addressed in a community program where he will have the encouragement and

---

[61] *Id*. at 21.

[62] *Id*. at 22.

[63] *Id*.

[64] *Id*.

[65] *Id*. at 23.

[66] *Id*.

[67] *Id*.

[68] *Id*.

assistance of his strong family support system."[69]

### III. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed."[70]
Federal law provides three exceptions:

(1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A);[71]

(2) "to the extent expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"[72]; or

(3) when the defendant was sentenced based on a retroactively lowered sentencing range.[73]

Martin moves the Court to reduce his sentence under Section 3582(c)(1)(A).[74] Motions to reduce a sentence under Section 3582(c)(1)(A) are often referred to as "compassionate release" motions.[75] Prior to 2018, only the Director of the BOP could file a compassionate release motion under Section 3582(c)(1)(A).[76] In 2018, Congress passed, and the President signed into law, the First Step Act.[77] That Act amended the process to file compassionate release motions by permitting prisoners to file such motions directly with a court.[78]

---

[69] *Id.* at 24.

[70] 18 U.S.C. § 3582(c)(1)(A).

[71] *Id.*

[72] *Id.* § 3582(c)(1)(B).

[73] *Id.* § 3582(c)(2).

[74] Rec. Docs. 83, 93.

[75] *See, e.g., United States v. Reeves*, No. CR 18-00294, 2020 WL 1816496, at *1 (W.D. La. Apr. 9, 2020).

[76] *Id.*

[77] *See id.*

[78] *See id.*

Yet, before filing a compassionate release motion directly with a court, a prisoner must exhaust the administrative requirements under Section 3582(c)(1)(A).[79] Indeed, under 3582(c)(1)(A), a defendant may personally move the Court to reduce his or her sentence after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of [a request to the Bureau of Prisons to bring a motion on the defendant's behalf] by the warden of the defendant's facility," whichever is earlier.

Once Section 3582(c)(1)(A)'s exhaustion requirement is satisfied, a court may reduce a prisoner's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[80] Finally, the Court must "also consider[ ] the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable."[81]

## IV. Analysis

In the instant motion, Martin argues that his medical conditions—combined with his elevated risk of contracting COVID-19 while incarcerated—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[82] In response, the government argues that Martin has not exhausted his administrative remedies or, alternatively, the motion for compassionate release should be denied on the merits.[83] The Court addresses each of these issues in turn.

---

[79] *See* 18 U.S.C. § 3582(c)(1)(A).

[80] *Id.*

[81] *Id.*

[82] Rec. Docs. 83, 93.

[83] Rec. Doc. 87.

### A.    *Whether Martin has Exhausted Administrative Remedies*

A defendant must exhaust administrative remedies before filing a motion in the district court seeking compassionate release pursuant to Section 3582(c)(1)(A).[84] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[85] the exhaustion requirement is satisfied, and the Court may consider a motion for compassionate release filed by the defendant. The Fifth Circuit has held that the exhaustion requirement is not jurisdictional, but it is a mandatory claim-processing rule.[86] Because the administrative exhaustion requirement is a claim-processing rule, it must be enforced unless it is waived by the government.[87]

In this case, Martin argues that he exhausted his administrative remedies by filing a request for compassionate release with the warden of his facility on October 16, 2020.[88] As support, Martin attaches an Administrative Remedy Informal Resolution Form he submitted to the BOP on December 3, 2020.[89] The form states that Martin "filed [his] compassionate release request over 30 days ago" and had not received a response.[90] On the form, Martin indicated that

---

[84] *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) ("The statute's requirement that a defendant file a request with the BOP before filing a motion in federal court is a [mandatory] nonjurisdictional claim-processing rule."); 28 U.S.C. § 3582(c)(1)(A).

[85] *Franco*, 973 F.3d at 468.

[86] *Id*.

[87] *See United States v. Rivas*, No. 20-10360, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule since the Government did not waive the exhaustion issue on appeal.").

[88] Rec. Doc. 83 at 2.

[89] Rec. Doc. 83-1 at 10.

[90] *Id*.

he had spoken to his case manager several times and was told to "be patient."[91] The form is signed by a BOP employee, and includes a response telling him to "[s]ee the C.M.C. Brodigan during Main-Line."[92]

The government argues that Martin has provided no documentation in support of his claim that he submitted a request to the BOP in October 2020.[93] According to the government, the BOP has affirmed that it has no record of such a request.[94] In reply, Martin contends that the Administrative Remedy Informal Resolution Form corroborates "his claim that he filed a request prior to November" and proves that the BOP was on notice of the request as of December 3, 2020.[95] Martin contends that it is "eminently clear that [he] made a good faith effort to request the warden's review of his claim and that the BOP was on notice of the request months ago."[96]

The Administrative Remedy Informal Resolution Form clearly shows that the BOP received and responded to an inquiry from Martin regarding the status of his request for compassionate release on December 3, 2020, over two months ago.[97] Considering the evidence and the lapse of time since the BOP either received the original request or was subsequently made aware of the request through the Administrative Remedy Informal Resolution Form, the Court finds that Martin has exhausted his administrative remedies.[98]

---

[91] *Id*.

[92] *Id*.

[93] Rec. Doc. 87 at 13.

[94] *Id.*

[95] Rec. Doc. 93 at 8.

[96] *Id*. at 12.

[97] Rec. Doc. 83-1 at 10.

[98] *See United States v. Smith*, No. 18- 232, 2020 WL 3451521, at *2 (E.D. Wash. June 24, 2020).

**B.**     ***Whether Extraordinary and Compelling Reasons Warrant a Sentence Reduction***

Pursuant to 28 U.S.C. § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the United States Sentencing Guidelines is the applicable policy statement. Application Note 1 to Section 1B1.13 defines the term "extraordinary and compelling reasons" to include the following situations: (1) the defendant is suffering from a terminal illness ("Subsection A1"); (2) the defendant is suffering from a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" ("Subsection A2"); (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less ("Subsection B"); (4) the death or incapacitation of the caregiver of the defendant's minor child or minor children ("Subsection C1"); (5) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner ("Subsection C2"); or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described" in the proceeding subsections ("Subsection D").[99]

In the instant case, Martin is not suffering from a terminal illness, and he is not yet 65 years old. Additionally, Martin does not argue that any family circumstances might warrant a reduction of his sentence under Subsection C. Accordingly, Subsections A, B, and C of the

---

[99] U.S.S.G. § 1B1.13 cmt. n.1  (2018).

Application Note do not apply. Instead, Martin argues that his case falls within Subsection D.

Subsection D requires a finding of extraordinary and compelling reasons to justify a reduction of sentence. The Sentencing Guidelines were last amended on November 1, 2018, and therefore the policy statement has not been updated since the enactment of the First Step Act on December 21, 2018.[100] Before the enactment of the First Step Act, only the Bureau of Prisons could move for compassionate release under Section 3582. The First Step Act amended Section 3582(c) to allow a defendant to bring a motion for compassionate release "if he has exhausted his administrative rights to appeal the BOP's failure to bring such a motion or has waited 30 days after the warden's receipt of the request, whichever is earlier."[101]

In light of the First Step Act, there has been disagreement over whether courts may determine what constitutes an extraordinary and compelling reason under the catchall provision in Subsection D.[102] Recent Fifth Circuit caselaw instructs that reference to the Guidelines is one step in the district court's own determination of whether extraordinary and compelling reasons warrant a reduction of sentence.[103] The Guidelines are not "the dispositive boundary of what may be judicially determined to be extraordinary and compelling reasons for a sentence reduction for medical reasons."[104] Accordingly, "the decision of whether to ultimately grant a modification is left to the sound discretion of the trial court," and such decisions are reviewed on appeal for abuse

---

[100] *See United States v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020).

[101] *United States v. Bell*, No. 20-10427, 2020 WL 5823316, at *1 (5th Cir. Sept. 30, 2020).

[102] *United States v. Lawrence*, No. CR 13-42, 2020 WL 5411778, at *3–4 (E.D. La. Sept. 9, 2020) (collecting cases).

[103] *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020).

[104] *Id*.

of discretion.[105]

In the motion, Martin contends that his medical conditions—combined with the elevated risk of contracting COVID-19 while in custody—constitute sufficient grounds for a sentence reduction under Section 3582(c)(1)(A).[106] Specifically, Martin asserts that he has hypertension, is overweight, and is prediabetic, and he argues that these conditions make him vulnerable to a severe infection if he contracts COVID-19.[107] The government contends that Martin has not submitted any medical documentation support for his claim that he is obese or diabetic.[108] The government concedes that Martin suffers from hypertension, but the government argues that hypertension is not among the CDC's list of COVID-19 risk factors.[109]

The BOP medical records submitted in support of this motion show that Martin suffers from hypertension, is overweight, and is prediabetic. Martin takes Lisinopril and Hydrochlorothiazide daily to treat his high blood pressure.[110] Martin is 6 feet tall and weighs 200 pounds, with a resulting Body Mass Index of 28.2, placing him at the higher end of the overweight range.[111] Laboratory work completed on Martin in March 2020 showed a hemoglobin A1C level of 5.8, with a note that a range of 5.7 to 6.4 represents "increased risk" for diabetes and above 6.4 reflects diabetes.[112]

---

[105] *Id.* (quoting *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011)).

[106] Rec. Docs. 83, 93.

[107] *See id.*

[108] Rec. Doc. 87 at 18.

[109] *Id.* at 19.

[110] Rec. Doc. 94-2 at 2.

[111] *Id.* at 5.

[112] Rec. Doc. 87-2 at 26. The CDC characterizes the 5.7% to 6.4% range in a hemoglobin A1C test as "pre-diabetes." *See* Centers for Disease Control and Prevention, *All About Your AC1,*

The CDC has stated that people with hypertension might be at an increased risk of severe illness from COVID-19.[113] According to information published by the CDC, people with hypertension face a risk of hospitalization that is three times higher than those without preconditions.[114] Additionally, the Journal of the American Medical Association published a study of 5,700 patients hospitalized with COVID–19 in the New York City area finding that hypertension was among "[t]he most common comorbidities," with 56.6% of hospitalized patients having hypertension.[115]

The CDC has also stated that overweight people might be at an increased risk of severe illness from COVID-19.[116] "Since the pandemic began, dozens of studies have reported that many of the sickest COVID-19 patients have been people with obesity."[117] More recent studies "demonstrated that even people who are merely overweight are at higher risk."[118] The largest descriptive study of hospitalized COVID-19 patients in the United States "found that 77% of

---

https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html (last visited Mar. 11, 2021).

[113] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 11, 2021).

[114] Centers for Disease Control and Prevention, *COVID-19 Associated Hospitalization Related to Underlying Medical Conditions*, https://stacks.cdc.gov/view/cdc/91858 (last visited Mar. 11, 2021).

[115] Safiya Richardson, et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID–19 in the New York City Area*, JAMA, https://jamanetwork.com/journals/jama/fullarticle/2765184 (last visited Mar. 11, 2021).

[116] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 11, 2021).

[117] Meredith Wadman, *Why COVID-19 is more deadly in people with obesity—even if they're young*, Science (Sept. 8, 2020), https://www.sciencemag.org/news/2020/09/why-covid-19-more-deadly-people-obesity-even-if-theyre-young (last visited Mar. 11, 2021).

[118] *Id.*

nearly 17,000 patients hospitalized with COVID-19 were overweight (29%) or obese (48%)."[119]

The CDC has stated that people with type 2 diabetes are at an increased risk of severe illness from COVID-19.[120] Prediabetes is "a serious health condition where blood sugar levels are higher than normal, but not high enough yet to be diagnosed as type 2 diabetes."[121] The impact of preexisting prediabetes on COVID-19 has not been well studied.[122] However, recent studies "suggest that preexisting prediabetes is much more prevalent in COVID-19 patients than known type 2 diabetes."[123] A suburban hospital study conducted in New Jersey found that 23.9% of hospitalized COVID-19 patients had preexisting prediabetes, and another study conducted in China found that 28.5% of hospitalized COVID-19 patients had preexisting prediabetes.[124] These studies "provide early indications for a possible association between preexisting prediabetes and COVID-19 disease severity."[125]

Considering the foregoing, Martin's medical conditions make him particularly vulnerable to severe illness from COVID-19 so as to warrant a finding of "extraordinary and compelling" circumstances to justify a reduction of sentence. However, the Court notes that Martin was transferred to Federal Correctional Institution Texarkana, a low security facility, during the

---

[119] *Id.*

[120] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 11, 2021).

[121] Centers for Disease Control and Prevention, *What is Prediabetes?*, https://www.cdc.gov/diabetes/basics/prediabetes.html (last visited Mar. 11, 2021).

[122] Thirunavukkarasu Sathish, *Preexisting Diabetes and the Severity of COVID-19*, Prim. Care Diabetes Europe (Sept. 2, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7480529/pdf/main.pdf (last visited Mar. 11, 2021).

[123] *Id.*

[124] *Id.*

[125] *Id.*

pendency of the instant motion. Martin has not updated the Court on conditions at FCI Texarkana. Because FCI Texarkana is a low security facility, it is unclear whether Martin is better able to practice social distancing at the facility. Additionally, the BOP has begun to administer COVID-19 vaccinations to inmates. Overweight inmates or inmates with hypertension are listed as Priority Level 3 on the BOP's COVID-19 Distribution Procedure.[126] As of March 11, 2021, the BOP has distributed 75,395 doses of the COVID-19 vaccine nationwide.[127] At FCI Texarkana, 182 inmates have been fully inoculated.[128]

## C.    *Whether the Section 3553(a) Factors Weigh in Favor of Reducing Martin's Sentence*

If "extraordinary and compelling" circumstances warrant a reduction in sentence, the Sentencing Guidelines' policy statement regarding compassionate release states that a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)."[129]

Martin argues that his release is supported by the Section 3553(a) factors, and he does not pose a danger to any person or to society if released.[130] The government asserts that "Martin's long criminal history, which involves several crimes with guns, violence, and drugs, combined with his conviction in the instant case for more gun-assisted drug dealing, make him a poor

---

[126] Federal Bureau of Prisons Clinical Guidance, *COVID-19 Vaccine Guidance* (Jan. 22, 2021), https://www.bop.gov/resources/health_care_mngmt.jsp (last visited Mar. 11, 2021).

[127] https://www.bop.gov/coronavirus/ (last visited Mar. 11, 2021).

[128] *Id.*

[129] U.S.S.G. § 1B1.13 cmt. n.1 (2018).

[130] Rec. Docs. 83, 93.

candidate for compassionate release."[131]

Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors related to whether a petitioner is a danger to the community include: "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[132] Section 3553(a), which sets forth the factors to consider in initially imposing a sentence, requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.][133]

On May 9, 2019, Martin appeared before this Court for sentencing after pleading guilty to multiple drug trafficking and firearm offenses.[134] This Court sentenced Martin to the mandatory minimum term of 120 months imprisonment.[135] The Court also sentenced Martin to a term of 6

---

[131] Rec. Doc. 87 at 21.

[132] 18 U.S.C. § 3142(g).

[133] 18 U.S.C. § 3553(a).

[134] Rec. Doc. 82.

[135] *Id.* Specifically, this Court sentenced Martin to a term of 60 months imprisonment as to each of Counts 1, 2, 3, 4, 5, 6, 7, 8, and 10, such terms to be served concurrently, and 60 months imprisonment as to Count 11, to be served consecutively to the sentence imposed for each of Counts 1, 2, 3, 4, 5, 6, 7, 8, and 10. *Id.*

years of supervised release.[136]

Martin is a 46-year-old, African American male.[137] He is married.[138] He has two adult children and three adult step-children.[139] Martin has a history of substance abuse, and he reportedly began using heroin at age 20.[140] At the time of sentencing, Martin reported that he was addicted to heroin.[141] He had never received substance abuse treatment, and he had reportedly concealed his heroin abuse from his family.[142]

Martin did not finish high school.[143] He has a limited employment history as a contractor and laborer.[144] At the time of his arrest, Martin was unemployed.[145] Martin has multiple prior convictions for illegal carrying of a weapon, possession of illegal drugs, illegal possession of a stolen automobile, armed robbery, fraud, simple battery, and driving under the influence.[146] He was on probation at the time of the instant offense.[147]

---

at 2.

[136] *Id*. at 3. Specifically, this Court sentenced Martin to a term of four years supervised release as to Count 1, six years as to Counts 2 through 8, and three years as to Counts 10 and 11, all terms to run concurrently.

[137] Rec. Doc. 57 at p. 5.

[138] *Id*. at ¶ 79.

[139] *Id*. at ¶¶ 77, 79.

[140] *Id*. at ¶ 91.

[141] *Id*. at ¶ 92.

[142] *Id*.

[143] *Id*. at ¶ 95.

[144] *Id*. at ¶¶ 100–03.

[145] *Id*. at ¶ 99.

[146] *Id*. at pp. 12–18.

[147] *Id*. at ¶ 64.

The Court must weigh all of the relevant factors under Section 3142(g) and Section 3553(a). Martin has an extensive criminal history involving possession of illegal substances and violence. In the instant offense, Martin possessed and distributed significant quantities of heroin and fentanyl. He also possessed multiple firearms in furtherance of his drug trafficking crimes. Although the Court is sympathetic to Martin's representation that his crimes were largely motivated by his untreated drug addiction, the purpose of compassionate release is not to provide for drug treatment. Martin's pattern of criminal conduct has continued throughout his adult life, suggesting that he would pose a danger to society if released. To date, Martin has served approximately one-third of his 120-month sentence. Releasing Martin at this time would create sentencing disparities between Martin and other defendants with similar criminal records convicted of similar crimes, which is what Section 3553(a) attempts to prevent.[148] Moreover, the risks Martin faces if potentially exposed to COVID-19 are being addressed by the Bureau of Prisons. Therefore, the Court finds that the relevant factors under Section 3142(g) and Section 3553(a) weigh against release.

## V. Conclusion

For the reasons discussed above, this Court has the authority to grant compassionate release under Section 3582(a)(1)(A). The Court finds that Martin's medical conditions constitute extraordinary and compelling reasons for a reduction in sentence. However, the Court notes that Martin has not provided any updated information on how COVID-19 has impacted his new, low-security facility. Moreover, the BOP has begun to administer COVID-19 vaccinations to inmates. As of March 11, 2021, the BOP has distributed 75,395 doses of the COVID-19 vaccine

---

[148] *See United States v. Reed*, No. CR 15-100, 2020 WL 2850145, at *4 (E.D. La. June 2, 2020) (Fallon, J.) (citing 18 U.S.C. § 3553(a)(6)).

nationwide, and 182 inmates have been fully inoculated at FCI Texarkana.[149] Additionally, the

Court finds that the requested reduction is inconsistent with the Section 3553(a) factors and

Martin would pose a danger to society if released. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kenneth Martin's motion for compassionate

release pursuant to 18 U.S.C. § 3582(c)(1)(A)[150] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 11th day of March, 2021.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[149] https://www.bop.gov/coronavirus/ (last visited Mar. 11, 2021).

[150] Rec. Doc. 83.